KNIGHT v. AMERICAN INSURANCE UNION.

Opinion delivered December 6, 1926.

1. INSURANCE—BENEFIT SOCIETY—LIMIT OF LIABILITY.—Where, in assuming to pay the benefits provided for members of a mutual aid society, the defendant society expressly limited its liability to the net amount to be realized from one assessment of the members of the roll of which he was a member after deducting his proportionate share of the expense of collecting it, and the assured assented thereto, such limitation was binding on his beneficiary.

2. EVIDENCE—COPY OF WRITING.—Testimony of one in charge of the records of a mutual aid society *held* competent to prove its by-laws and the merger contract under which it consolidated with defendant, where he testified that the copy of the by-laws was true and correct and that the copy of the merger contract was examined and compared with the original.

3. EVIDENCE—DELIVERY OF MAIL MATTER.—In the absence of proof to the contrary, it will be presumed that matter properly mailed was received by the addressee.

4. INSURANCE—ACCEPTANCE OF CONTRACT.—Evidence *held* to support a finding that the insured, a member of a mutual benefit society, received a copy of the contract whereby the insurer was consolidated with another insurance society, and that he accepted and became bound by its provisions.

Appeal from Crawford Circuit Court; *James Cochran*, Judge; affirmed.

*Chew & Ford*, for appellant.

*Evans & Evans*, for appellee.

WOOD, J.  The Home Protective Association of Springdale, Arkansas, hereafter called Association, is a mutual aid society organized and doing an insurance business in this State for the protection of its members on the assessment plan. On the 24th of March, 1919, the association issued its ''cooperative graduating certificate'' insuring the life of Horace Knight of Van Buren, Arkansas, in favor of Joe Knight. By the terms of the certificate, the association, in consideration of the application of Horace Knight, undertakes to pay Joe Knight, the beneficiary in the certificate, on proof of the death of the assured, the sum of $100 should the death of the assured occur within the first six months, and thereafter

to be increased at the rate of $12.50 per month during 72 months, until it reaches the maximum of $1,000. The payment of the amount stated in the certificate was conditioned only upon the prompt payment of the assessments under the rules set forth in the application for the certificate and by-laws of the association. The application, among other things, provides: ''The assessments shall begin at 43 cents, and graduate one cent per month for the first eighty-four months of the life of the certificate, when it reaches $1.27, which is named as the maximum amount which can be assessed against this applicant on any one death loss or accident benefit; provided, if the proceeds of said assessment, together with funds on hand, are not sufficient to provide for the maximum death benefit, a sufficient pro rata assessment shall be levied on all members to provide sufficient funds for such maximum death benefit. * * * It is understood and agreed that the applicant shall become a member of a roll not exceeding one thousand (1,000) members, and certificate shall be issued accordingly, each roll to be given a distinct number by which it shall be known and designated; and assessments for the redemption of certificates shall be made numerically on said rolls as deaths occur, to the end that each roll of certificate holders shall share equally the burden. The value and condition of the certificate for membership to be issued on this application shall be as follows: Should the death of the applicant occur within the first six months from the date of the application, the beneficiary shall receive the minimum certificate value of $100. Value of certificate to increase thence $12.50 per calendar month up to and including the seventy-two months of the life of the certificate, when it reaches its maximum value of $1,000. * * * It is hereby understood that this certificate is a part of the contract and a warranty by the member,'' etc.

This action was instituted in July, 1925, by Joe Knight, the beneficiary in the certificate, against the American Insurance Union, hereafter called union, on the certificate as above set forth, to recover the sum of

$800 which Knight alleged had accrued and was due under the certificate. He alleged that all the provisions of the contract had been complied with on the part of the assured at the time of his death, that the union had assumed all the debts of the association, that all the provisions of the certificate had been complied with by the plaintiff since the death of the assured, and he prayed for judgment against the union in the sum of $800, together with 12 per cent. interest and reasonable attorney's fees. The union answered, and set up that, according to the by-laws of the association in force at the time the certificate was issued, the association was only bound to pay to the beneficiary, on the death of the assured, the proceeds of one assessment on the members of the roll to which the assured belonged, less the actual cost of making and collecting such assessment and paying out the proceeds thereof. It alleged that the association was consolidated with the union on November 1, 1918, under a contract which, among other things, provides as follows: "The American Insurance Union shall not be legally obligated to pay the claims arising among the membership hereby consolidated in any amount in excess of the amount due the member or his beneficiary or beneficiaries under the by-laws of the Home Protective Association and the by-laws of the board of directors thereof." And further: "The American Insurance Union will pay the benefits provided for members of the association hereby consolidated as provided for under the by-laws of the Home Protective Association and the by-laws of the board of directors thereof, but in no case shall the association be liable in excess of the amount provided therein, it being expressly agreed and understood that the American Insurance Union shall not be liable to the holder of the attached certificate in excess of the net amount realized from one assessment to the members of the roll of which he was a member in the Home Protective Association, after deducting his proportionate share of the expense of operation." The union further alleged that, after the consolidation, it sent a copy of the merger contract to

Horace Knight, to be attached to and become a part of the contract of insurance. It alleged that, in compliance with the by-laws of the association, the union levied an assessment on the members of the roll to which Horace Knight belonged for the month of May, 1924, the month in which he died, and that such assessment produced the sum of $79.82, from which, after deducting the sum of $13.30 to cover the expense of levying, collecting and paying out said assessment, there remained the sum of $66.52, which amount the union tendered to the plaintiff, and paid the sum into court, and prayed that it have judgment for its costs. When the cause was called for trial, and before the testimony was adduced, the union paid into the court the sum of $66.52, together with costs of the action to that time. The plaintiff then introduced in evidence the certificate containing the provisions as above set forth. Thereupon the defendant union admitted that the assessments had all been paid and that the certificate was in full force and effect at the date of the death of the assured, and that the plaintiff had complied with the terms of the contract of insurance as to proof of death of the assured. The defendant read in evidence the deposition of Dr. George Hoglan, over the objection of the appellant that this testimony was irrelevant and incompetent. This witness testified, among other things, that the union and the association entered into a contract on November 1, 1918, the original of which was on file at the home office of the union. He attached to his deposition, as Exhibit No. 2, "a duly examined and compared copy of the merger contract," which was submitted to the insurance departments of the States of Arkansas and of Ohio and approved by them before it became effective. The union sent a copy of this contract with a memorandum to each member of the association, with a receipt attached to the rider, for acknowledgment by the member. His Exhibit No. 3 was a copy of that instrument. The union sent one to Horace Knight. He became a member of the union. The witness then stated that he was familiar with the by-laws of the association.

The original records of these by-laws were kept in the files of the home office of the union. He attached to his deposition, as Exhibit No. 4, "a duly examined and compared copy" of the by-laws of the association that were in force at the time of the consolidation of the association and the union. The union tendered to Joe Knight the sum of $66.52 as the amount due on the certificate, which he refused to receive. One assessment was levied on the entire membership of the roll to which Horace Knight belonged. The records show that this assessment produced $79.82. The full amount was not tendered because § 113 of the by-laws of the union and the merger contract provided that one-sixth of the amount collected should be deducted, leaving the amount of $66.52, which was tendered. The witness testified that he had personal knowledge of the records of the union, and that the records referred to were the original records. He kept the original minutes of the constitution of the union when the same was adopted. They were signed by the witness, and were permanent records of the union. The witness was not present when the constitution and by-laws of the association were adopted, but he was present when copies were made from the original constitution and by-laws when same were turned over by the association to the union in 1918, and witness knew that these were true and correct copies. The assessment levied for the month of May, 1924, the month in which the assured died, were levied on seventy-four members, and the assessments were paid during the month June, 1924. According to § 113 of the constitution and by-laws of the union and the merger contract, one-sixth is deducted for expenses. Exhibit 1 to witness' deposition was § 113 of the constitution and by-laws of the union, which provided, among other things, that the expense and extension fund of the society shall receive one-sixth of all premiums collected for the expenses of levying, collecting and paying out the same. The documentary evidence referred to in the answer and by this witness was all introduced and read to the jury.

In addition to the testimony of this witness there was further testimony to the effect that Horace Knight was entered on the records of the union as a certificate holder, that his death occurred on May 28, 1924, and that, on that day, an assessment was levied on the entire membership roll to which he belonged, which resulted in a collection of $79.82, and that, according to the constitution and by-laws of the union and the merger contract, one-sixth was deducted for expenses. This levy was made under the supervision of the witness, whose duty it was to make the levies and collections.

In addition to the above, the merger contract also contained the following provision: "It is hereby understood and agreed that the members hereby consolidated shall be subject to the constitution and laws of the American Insurance Union now in force or that may hereafter be in force, except as herein otherwise provided."

The plaintiff asked the court to direct the jury to return a verdict in his favor, in the sum of $800, which the court refused to do. The court, instead, instructed the jury that, upon the only issue here, according to the undisputed proof and contract in the case, they should return a verdict in favor of the plaintiff in the sum of $79.82, less the actual expense of collecting the same. The plaintiff excepted to the above ruling of the court. The jury returned a verdict in favor of the plaintiff in the sum of $77.52. Judgment was entered for that sum, from which the plaintiff duly prosecutes this appeal.

1. The appellant has no right to recover the sum of $800, which he claimed was due under the certificate issued by the association, unless the contract by which the association was consolidated with the union gives him such right. The appellant alleged that the appellee, for a valuable consideration, assumed all the debts and liabilities of the association. The appellant thus bottoms his right to recover of the appellee upon the contract by which the appellee union and the association were consolidated.

It will be observed, from the provisions of the merger contract set out above, that the appellee is not obligated to pay the claims of the members of the protective association in any amount in excess of the amount due the member of such association under the by-laws; that it is not liable in excess of the net amount realized from one assessment of the members of the roll of which he was a member in the association and after deducting his proportionate share of the expense of operation. The by-laws of the association provide "in no event shall any beneficiary receive more than the face value of such certificate, nor more than the proceeds of one assessment, less the actual cost of making and collecting such assessment and payment of the proceeds thereof." The amount to be paid the beneficiary, less the cost of making; collecting, and paying the proceeds, is that produced by one assessment on the entire membership of the roll to which the deceased member belonged. Learned counsel for the appellee contend that there is no competent testimony in the record to establish the above provisions of the contract of merger and that there is likewise no competent testimony to prove the above provisions of the by-laws of the association. They rely upon the general rule of practice in the production of evidence, as announced by this court through Judge LACEY, in *Brown v. Hicks,* 1 Ark. 232, at page 243, as follows:

"It is a universal rule of practice that a party will never be permitted to resort to secondary or inferior evidence while it is in his power to adduce a higher grade, or more conclusive testimony. The best attainable evidence shall be adduced to prove every disputed fact. This rule of evidence is founded upon a supposition of fraud, and its operation is every way highly salutary and important."

And counsel for appellant cite other Arkansas cases, to-wit: *McNeill* v. *Arnold,* 17 Ark. 154; *Supreme Lodge K. of P. v. Robbins,* 70 Ark. 364, 67 S. W. 758; *Rural Home Lodge No. 1720* v. *Sea,* 143 Ark. 167, 220 S. W. 305; and 10 R. C. L. "Evidence," § 66 *et seq.; Mandel* v. *Swan*

*Land & Cattle Co.,* 154 Ill. 177, 40 N. E. 462, 27 L. R. A. 313. But we have examined these authorities, and there is nothing in any of them to contravene the well established rule that, whenever a copy of a record or document is itself made original or primary evidence, it must be a copy made directly from or compared with the original. For instance, Judge Lacey, in the case cited above, from which the excerpt is quoted, says: "It does not appear that the subscribing witness ever compared or examined the supposed copy with the original, nor did he pretend to say that he knew it to be an exact or sworn copy. All he states is that he believes the contents of the two instruments are substantially the same, but he has not seen the original for many years."

In *Supreme Lodge K. of P.* v. *Robbins, supra,* Judge Riddick, speaking for the court, recognized the rule as to certain books, papers and documentary evidence, when he says: "It appears from the evidence, we think, that these laws of the order were matters of record on the books of the order. It follows that they could not be proved by parol. As it would have been inconvenient to produce the original books, they should have been proved by an examined or authenticated copy. It was therefore not proper to have witness state his opinion of what the law was. He should have produced a copy of the law or record. * * * The witness should have stated that he had compared it with a record of these laws, and that it was a true copy of the same." See also *Miller* v. *Johnson,* 71 Ark. 174, 72 S. W. 371.

In *Rural Home Lodge No. 1720* v. *Sea, supra,* we merely held that the authority to try a member of a benefit society and to suspend him should have been shown by producing the rule, regulation or by-law conferring such authority. So that case is not in point.

And in *McNeill* v. *Arnold, supra,* we held that the statute law of another State can be proved only by the production of the statute, and not by parol. So likewise that case is not in point.

Now, an examination of the testimony of Dr. Hoglan discloses that, according to the rule recognized in *Brown* v. *Hicks, supra,* and in *Supreme Lodge K. of P.* v. *Robbins, supra,* the by-laws of the association and merger contract were proved by competent testimony. Dr. Hoglan's testimony shows that he had charge of these records and documents. Concerning the merger contract, among other things, he said: "I am familiar with such contract and with the terms thereof. The original contract is on file at the home office of the American Insurance Union. I am attaching, as Exhibit No. 2, a duly examined and compared copy of the merger contract," etc. Concerning the proof of the by-laws of the association he said: "I was present when the copies were made from the original constitution and laws which were turned over by the Home Protective Association in 1918, and I know the copy to be a true and correct copy." Therefore we conclude that the by-laws of the association and the consolidation contract were proved by competent testimony. Under the terms of the merger agreement and the by-laws of the association, as above set forth, the appellant was only entitled to recover the net amount realized from one assessment of the members of the roll to which the deceased member belonged, after deducting his proportionate share of the expense of making, collecting, and distributing the assessment. Such is the holding of this court in the cases of mutual benefit insurance societies having by-laws containing similar provisions to that under review here. *Home Mutual Benefit Association* v. *Roland,* 155 Ark. 450, 244 S. W. 719; *Home Mutual Benefit Assn.* v. *Round,* 157 Ark. 597, 249 S. W. 3; *Fayetteville Mutual Benefit Assn.* v. *Tate,* 164 Ark. 317, 261 S. W. 634.

2. As we have seen, the by-laws of the association provide that each beneficiary shall receive the proceeds of one assessment of the entire membership of the roll to which the deceased member belonged, and no more than one assessment, less the cost of making and collecting such assessment and paying out the proceeds thereof. The undisputed testimony in the record shows that the

assessment made under the provisions of this by-law yielded $79.82. The court instructed the jury to return a verdict for such amount, less the actual expense of the collection, and the jury returned a verdict in the sum of $77.52. There is no contention by the appellant that the verdict, under the instructions of the court, was excessive, and appellant's only contention is that the court erred in directing the verdict, and that the verdict was not supported by legal testimony. It follows from what we have said that the instruction of the court was correct, and the verdict of the jury was responsive to the undisputed testimony.

3.   The case of *American Insurance Union* v. *Robinson,* 170 Ark. 767, 281 S. W. 393, is not in conflict with our decision herein holding that the appellee is not liable for the full amount claimed by the appellant. In that case the plaintiff's action was predicated upon a certificate of insurance precisely similar to the foundation of the action in the case at bar, and the American Insurance Union, the defendant in that case, defended on the same grounds as it interposes here, to-wit, that the contract of consolidation limited the amount of its liability to such amount as should be collected from the membership roll to which the deceased member belonged, less one-sixth of the amount collected as expenses for collecting the same. We held, under the facts adduced in that case, that the defendant, the appellant, was liable for the full amount of the face value of the certificate. But the facts of that case were entirely different from the facts in the case at bar. For instance, the notification of the merger contract to be attached as a rider to the certificate or contract of insurance, as is said in the opinion, "did not attempt to change her membership or the terms of the original contract. It contained no provision requiring her to accept the rules and by-laws of the Home Protective Association of Springdale, nor did it contain a notification that her certificate would be controlled or governed by it. * * * It is true that appellant introduced testimony tending to show that it mailed a rider to Mrs. Robinson to be

attached to her certificate of insurance, embodying the substance of its contract with the Home Protective Association of Springdale limiting its liability in the payment of death losses, but appellee introduced testimony to the effect that Mrs. Robinson never received or heard of such rider. This question of disputed fact was determined against the appellant in the trial, and it is bound by the finding.''

The undisputed facts here are entirely different. The undisputed evidence shows that the assured was notified of the terms of the merger contract, to be attached as a rider to his certificate of insurance. The undisputed testimony is that the American Insurance Union, at the time of the merger, sent a copy of the contract with a memorandum to each and every member of the Home Protective Association, with a receipt attached to the rider for acknowledgment by the member. The American Insurance Union sent one of these to Horace Knight by mail. There is no testimony in the record to the effect that Knight did not receive the above rider. The presumption would be, since the same was properly mailed to him, in the absence of proof to the contrary, that he did receive the same. But, aside from this presumption, the conclusion is irresistible that the assured member did receive the rider, for he continued, after the merger contract until his death, to pay the assessments to the appellee. The undisputed testimony therefore justified the trial court in finding that Horace Knight, the assured member, received a copy of the consolidation contract and accepted its provisions. The appellant predicated his cause of action upon such contract, and, having accepted the same, he is bound by its terms.

The record presents no error, and the judgment of the trial court is therefore affirmed.