AMERICAN INSURANCE UNION *v.* ROWLAND.

Opinion delivered July 2, 1928.

*Caraway, Baker & Gautney,* for appellant.

*Jeff Bratton,* for appellee.

MEHAFFY, J. The People's Mutual Life Insurance Company, an assessment company, organized under the laws of the State of Arkansas, with its home office at Jonesboro, Arkansas, in the year 1916 issued a policy upon the life of Mrs. Jane Vandment of Paragould, Arkansas. Mrs. Vandment was placed in roll 3, and held certificate No. 869. The name of the company was afterwards changed to Mutual Life Insurance Company of Jonesboro. In June, 1920, the Jonesboro company entered into a contract with appellant, whereby appellant took over the membership of the Mutual Life Insurance Company, and the American Insurance Union became liable to the same extent on every policy issued until it had reached its highest assessment. The highest assessment in Mrs. Vandment's case was $1.49. After the merger, her payments were $1.74, twenty-five cents of this being for chapter dues. She paid her dues according to the contract from 1916 to 1926. She paid the same dues after the merger as before. The policy issued by the People's Life Insurance Company provided for the payment of assessments by members, and provided that, if death occurred within six months, the sum agreed to be paid was $100, but after six months the policy was to increase in value $12.50 on the first day of each calendar month for seventy-two consecutive months, until it reached its full value of $1,000, provided that the premiums were paid according to the contract. The policy had a disability clause, one of the provisions of which was that, in the event the insured became insane or dis-

abled by reason of insanity, premiums or assessments should cease during such disability.

When the appellant took over the Mutual Life Insurance Company of Jonesboro, it wrote to the members and certificate holders of the Mutual Life Insurance Company of Jonesboro, as follows:

"Dear Friend: Appended hereto is a rider to attach to the certificate or policy issued to you by the Mutual Life Insurance Company of Jonesboro, Arkansas. All you need to do is to attach this rider to your policy, and pay all assessments as usual. When this letter and rider is attached to your policy it is assumed by the American Insurance Union in accordance with the contract. You need not send us your policy.

"You are now a member of the American Insurance Union, entitled to all the rights and privileges of such members. Continue to send your assessments or premiums to the same place until further notice.

"Congratulating you upon your admission to membership in this splendid association, we are,

"Fraternally yours,

"American Insurance Union."

The rider which was inclosed, and which was to be attached to the policy, is as follows:

"The American Insurance Union hereby assumes the attached certificate of membership issued to the holder thereof by the Mutual Life Insurance Company of Jonesboro, Arkansas (or other company merged or affiliated therewith), and agrees to receive the holder thereof into membership in the American Insurance Union under said certificate in accordance with the terms and conditions of said certificate, the constitution and laws of the American Insurance Union, and the terms and conditions of the contract between the Mutual Life Insurance Company of Jonesboro and the American Insurance Union, dated June 1, 1920, a copy of which contract is on file in the Insurance Department of the State of Arkansas.

"Executed at Columbus, Ohio, this the 25th day of June, 1920. "John J. Sentz, President.

"Attest: Geo. W. Goglan, Secretary."

Mrs. Vandment was adjudged insane on June 27, 1926, by the probate court of Greene County, but her dues were paid up to and including August, 1926. Jane Vandment died in the State Hospital for Nervous Diseases at Little Rock, in December, 1926. The dues were paid and received by the American Insurance Union after the merger just as they were before the merger, until 1924, when the appellant sent a policy for $197 to Cail Rowland, and when he received same, he wrote the following letter:

"American Insurance Company,
Mr. C. L. Jordan, Cashier.

"Dear sir: I received the new policy March 24, on Jane Vandment for the amount of $197, but the policy I taken out in 1916 with the Mutual Life Insurance Company was for $1,000 after 72 months, so I have paid on it for 92 months now. So you can give me a policy for $1,000 or refund the amount I have paid in, so let me hear at once.

"Yours truly,
"Cail Rowland."

In reply to Rowland's letter, the appellant wrote as follows:

"Dear sir: In reply to your letter of recent date, we beg to advise that the officers of the Mutual Life Association found that the rates they were charging were inadequate to purchase the amount of insurance promised in the policies. They therefore merged with the American Insurance Union. This society agreed to carry the policies until they reached maximum assessment dates and then give each member choice of two options for continuing insurance in the American Insurance Union.

"A circular letter was sent her describing the different options from which she could select the type of policy she desired. She continued to pay maximum assessments of $1.49, which purchases at her attained age $197 effective insurance. This is the amount that will be paid in the event of death of this member

"There is no provision in these policies for cash settlement or return of premiums paid by the members. The member has had protection for the time she paid the premiums.

"Trusting this will be satisfactory, we are,

"Your very truly,
"American Insurance Union."
"Medical Department."

There was also introduced in evidence a copy of the contract between the Mutual Life Association and appellant and the testimony of witnesses as to the rules and regulations of the American Insurance Union, and also its constitution and by-laws. It is unnecessary to set out the testimony in full, but so much of the evidence as is necessary to call attention to will be set out in the opinion.

Appellant insists that an interpretation of the contract made between the American Insurance Union and the Mutual Life Insurance Company will settle almost all the disputed questions in this suit. It is insisted that it was under no obligation to take over the members of the Mutual Life Insurance Company of Jonesboro, and when it did take them over it was under conditions of a contract dated June 1, 1920. If this contract was the only contract, and if the insured had agreed to it, appellant's contention would be correct. However, after making this contract, appellant wrote to the insured and inclosed the rider. The letter stated: "Appended hereto is a rider to attach to the certificate or policy issued to you by the Mutual Life Insurance Company of Jonesboro, Arkansas. All you need to do is to attach the rider to your policy and pay your assessments as usual. When this letter and rider is attached to your policy, it is assumed by the American Insurance Union in accordance with the contract. You need not send us your policy." From the statement in the letter, "assumed in accordance with the contract," the assured had the right to believe that it meant the contract or

policy issued by the Jonesboro Company. The rider referred to in the letter has been set out above. It states:

"The American Insurance Union hereby assumes the attached certificate of membership issued to the holder thereof by the Mutual Life Insurance Company of Jonesboro, and agrees to receive the holder thereof into membership in the American Insurance Union under said certificate, and in accordance with the terms and conditions of said certificate, the constitution and laws of the American Insurance Union and the terms and conditions of the contract between the Mutual Life Insurance Company of Jonesboro and the American Insurance Union, a copy of which contract is on file in the Insurance Department."

Appellant did not send copy of its contract to the insured, but it contends that there is no liability, because an assessment was not paid in time. The clause exempting a member from paying assessments when insane is as much a part of the contract as any other provision in the contract, and the undisputed evidence shows that Mrs. Vandment was insane at the time appellant claims the assessment was not paid in time. Both parties to the contract are bound by it, but they are bound by all the provisions. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and give effect to that intention, if it can be done consistently with legal principles. In order to ascertain the intention of the parties, this court has said: "Courts may acquaint themselves with the persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they view them and so as to judge of the meaning of the words and the correct application of the language to the things described." *Inter-Southern Life Ins. Co.* v. *Shutt,* 175 Ark. 1161, 1 S. W. (2d.) 801; *Wood* v. *Kelsey,* 90 Ark. 272, 119 S. W. 258; *Loudenbeck Fertilizer Co.* v. *Tenn. Phosphate Co.,* 121 F. 298, 61 L. R. A. 402; *Hoffman* v. *Moffioli,*

104 Wis. 630, 80 N. W. 1032; *Rockefellow* v. *Merritt*, 76 F. 909, 35 L. R. A. 633; *Minn. Milling Co.* v. *Goodnow*, 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202.

Policies of insurance should receive a liberal and reasonable construction in favor of the beneficiaries. *Pfeiffer* v. *Mo. State Life Ins. Co.* 174 Ark. 783, 297 S. W. 847; *Conn. Fire Ins. Co.* v. *Boydston*, 173 Ark. 437, 293 S. W. 730; *Lord* v. *Des Moines F. Ins. Co.*, 99 Ark 476, 138 S. W. 1008; *Great Southern Fire Ins. Co.* v. *Burns*, 118 Ark. 22, 175 S. W. 1161.

This court has said: "Appellant is the author of the policy, so its provisions must be liberally construed in favor of the insured or beneficiary. Another way of stating the rule is that the limitations or restrictions upon the liability contracted for should be construed strictly and most strongly against the insurer. Another well settled rule of construction is that, if the limitations or restrictions against liability contain ambiguities, they should be resolved against the insurer rather than the insured or beneficiary." *Life & Casualty Ins. Co. of Tenn.* v. *Ford*, 172 Ark. 1098, 292 S. W. 389.

"A written contract should, in case of doubt, be interpreted against the party who has drawn the contract. Sometimes the rule is stated to be that, where doubt exists as to the construction of an instrument prepared by one party thereto, upon the faith of which the other has incurred an obligation, that construction will be adopted which will be favorable to the latter. * * * To state the same proposition conversely, it may be said that everything is to be taken most strongly against the party on whom the obligation of the contract rests." 6 R. C. L. 854.

"It is also a well settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. The

whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized, if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions.'' 6 R. C. L. 837-8.

Viewing this contract as a whole and keeping in mind the above rules, we see no difficulty in holding that the meaning of the contract is that the assessments shall be paid monthly, unless the insured becomes insane, and then the assessments cease. In the instant case, the insurer made the contract, and, even if the insured had an opportunity to read the merger contract, we still think the disability clause was valid and binding, and that during the period of insanity no assessments are required to be paid, and the policy did not lapse because of failure to pay.

It is also contended by the appellant that the amount of premiums which the insured paid purchased a policy for $197.35 and not a policy for $1,000. We think appellant has misconstrued the contract, and that it does not mean that, when members of the Mutual Life Insurance Company under the circle plan pay monthly assessments provided in their certificates until such time as said pay-

ments or assessments shall reach the maximum, said member shall then have a policy for which said assessments are sufficient to pay, but, on the contrary, the clause in the contract says: "And thereafter said members shall pay to the American Insurance Union each and every calendar month, a sum sufficient to meet the cost of their insurance and their proportionate share of the expenses of operation," etc. Under the contract the insured had a right, when payments had been made for seventy-two months, to pay such assessments as she was called on by the company to pay to keep in force the policy of $1,000. The insured in this case had reached the maximum in 1922, had at that time been paying two years to the appellant company. It was then the duty of the appellant company, if it intended to increase the assessments, if it was necessary to increase them in order to keep in effect the $1,000 policy, to notify the insured of the amount of the assessments. Instead of doing this, it continued for two years more to send notices of assessment of the same amount, and the insured continued to pay these assessments. In fact, there was never at any time any change in the assessments, and the insured had a right to believe that she was still paying on the old certificate in accordance with the terms of the letter and rider mailed to the insured to be attached to and become a part of the original certificate.

It is, however, insisted that a new policy of $197 was sent to the insured, and that she retained this policy, and is thereby estopped or is bound by a new policy for $197, and appellant quotes from and relies on the case of *American Insurance Union* v. *Benson,* 172 Ark. 1043, 291 S. W. 1007, and the case of *Knight* v. *American Insurance Union,* 172 Ark. 303, 288 S. W. 395. In the Benson case, above referred to, it is said by the court:

"The appellee bottoms his action against the appellant on the ground, under the merger contract, that the appellant had assumed the liability on her policy of insurance. The case in this particular is ruled by the recent case of *Knight* v. *American Insurance Union,* 172

Ark. 303, 288 S. W. 395, where we said: "The conclusion is irresistible that the insured member did receive the rider for a continuance, after the merger contract, until his death, to pay his assessments to the appellee. The undisputed testimony therefore justified the trial court in finding that Horace Knight, the assured member, received a copy of the consolidation contract and accepted its provisions. The appellant predicated his cause of action upon such contract, and, having accepted the same, he is bound by these terms."

One difference between the case of *Knight* v. *American Insurance Union* and the instant case is that in the Knight case the undisputed facts showed that the assured was notified of the terms of the merger contract, to be attached as a rider to his certificate of insurance. The undisputed evidence in that case was that the American Insurance Union at the time of the merger sent a copy of the contract as a memorandum to each and every member of the Home Protective Association, with a receipt attached to the rider for acknowledgment by the member. In the instant case the undisputed proof is that the appellant did not send to the insured a copy of the merger contract, and that it was not attached to the policy, but the letter sent stated that the appellant assumed the original contract, and that contract had the disability clause, and the insured was never notified until two years after the maximum assessment had been reached, and in the instant case the suit was based on the original certificate. In the Knight case it was based upon the merger contract. The Knight case and the Benson case are not in conflict with the decision in this case. This case is like the case of *American Insurance Union* v. *Robinson*, 170 Ark. 767, 281 S. W. 393, in which the court said: "The rider attached to the certificate of insurance issued to Mary S. Robinson by the American Mutual Benefit Association of Jonesboro was an absolute assumption of liability under certificate No. 908, class 4, issued by the latter fraternal organization to Mrs. Robinson." Mrs. Robinson never received the

merger contract and never heard of it. In the instant case, Mrs. Vandment never received it, and the only thing she ever heard about it was that the letter stated it was on file with the Insurance Department.

It is contended that Rowland paid on the new policy, and that it had the number of the new policy and not the number of the old certificate, but he was advised in the beginning that he would pay his assessments as usual, and that, when the letter and rider were attached to the policy, it was assumed by the American Insurance Union in accordance with the contract. That necessarily meant the contract of insurance or certificate to which the rider was to be attached. The insured was under no obligation or duty to accept the new policy, and the policy did not lapse because of the failure to pay the premium on it, the insured at the time being insane.

Each party requested a peremptory instruction, and requested no other instructions. This amounted to a submission of the question of liability to the court, and the court's finding under such circumstances is as effective as the verdict of a jury. If there is any substantial evidence upon which to base the finding, it will not be disturbed. *Webber* v. *Rodgers,* 128 Ark. 25, 193 S. W. 87. We think the evidence was ample to justify the court in finding for the plaintiff in the sum of $1,000 and interest, and the judgment is affirmed.