FOWLER *v.* UNIONAID LIFE INSURANCE COMPANY.

Opinion delivered October 14, 1929.

*E. M. Fowler,* for appellant.

*J. V. Walker, W. B. Sorrels, Creed Caldwell, Bullion & Harrison* and *Duty & Duty,* for appellee.

MEHAFFY, J. On the first day of October, 1914, the appellant, L. W. Fowler, made application for member-

ship in the Mutual Aid Union, and was issued a certificate by said company. The application stated that it was understood that the value and conditions of the certificate for membership to be issued on this application shall be as follows: The application then states that, if death should occur within the first six months, the benficiary shall receive $75, and that the value of the certificate would then increase $12.50 per calendar month until the value of the certificate was $1,000; provided that prompt and due payment be made of all assessments as provided by the by-laws and regulations of the Mutual Aid Union. The assessment was to begin at 38 cents and reach its maximum at $1.18.

This was a mutual assessment company, and the appellant paid his assessments from 1914 up until December, 1926, when the Mutual Aid Union entered into a reinsurance contract with the appellee.

The application also contained the provision that it should be considered a part of the contract for membership, and that, if the application was accepted and certificate issued, the applicant accepted the by-laws and regulations with all amendments governing the Mutual Aid Union, and appointed and constituted J. W. Walker, R. H. Whitlow and J. E. Felker, the officers of the Mutual Aid Union, jointly, and their successors, to be his lawful attorney in fact to cast his vote at the annual election on the first Tuesday in January of each year, not only on the question of the election of the directors, but any other question arising for consideration. This power of attorney was never revoked by appellant, and this application was a part of the contract and a warranty by the member.

From the application there was issued to appellant a certificate in Circle No. 3, certificate No. 822. It provided for the payment of the amounts mentioned in the application within thirty days after the receipt at the home office of satisfactory proof of the death of the applicant.

After the reinsurance contract was entered into between appellant and the Mutual Aid Union, the appellee wrote appellant a letter, and enclosed him a notice of the reinsurance agreement. It expressly stated in the letter that it assumed the liabilities of the Mutual Aid Union to its members and certificate holders, and would carry out the agreement of the Mutual Aid Union with the members, subject to the terms of the transfer.

The letter also stated: "Kindly attach the enclosed certificate of assumption to your membership certificate, which is all that is necessary, and hereafter address all communications and make your remittances for assessments to the Unionaid Life Insurance Company, Rogers, Arkansas."

The certificate of assumption accompanying said letter reinsured and assumed all liability under certificate No. 822, but expressly stated that this contract is made in conformity with the reinsurance contract between the Unionaid Life Insurance Company and the Mutual Aid Union, filed with and approved by the Commissioner of Insurance and Revenues of the State of Arkansas, etc.

Appellee sent appellant a notice on June 17, 1928, advising him that his rate for the month of June under the certificate that he held would be $1.92, and stated certain options that he might have.

The reinsurance contract provided that the payment of the premium or assessment should be determined by the acceptance of the terms and provisions.

The appellant in his application, as we have already said, provided that the application and certificate, together with the by-laws, are taken and construed as a part of the agreement. In other words, appellant's contract was not simply the certificate, but it was the application, the certificate and the by-laws of the company. This was the agreement of the parties. This was the contract.

The articles of incorporation of the Mutual Aid Union provided: "The board of directors shall have power to adopt and execute such plans and systems of

insurance as they may deem for the best interests of the corporation; to fix and determine the amount for which the policy or certificate shall be issued, rates and amounts of assessments or premiums, and the terms and manner of payment thereof; to make, alter or repeal by-laws, rules and regulations for the transaction of the business of the corporation, and as they may deem expedient.''

At the time that appellant made his application and received a certificate in 1914, one of the by-laws in force provided: ''Any amendment, alteration or addition to this instrument must be proposed by one of the directors, and must have the unanimous support of the board of directors before being accepted.''

It further states: ''The association retains the right and privilege to call increased, additional or extra assessments for those members belonging to circles or in the step-rate divisions, as is necessary or deemed expedient by the board of directors.''

The appellant first contends that the lower court committed reversible error in finding that appellee had a right to adjust the rate of insurance premiums which appellant had been paying, and he bases this contention on the fact that the application and certificate fixed the amount of assessments, the minimum being 38 cents and the maximum $1.18, and contends that this was a written contract between the appellant and the Mutual Aid Union, and that appellant had no right to change this written contract without his consent.

If the certificate and application constituted the whole contract, appellant's contention would be correct. But the certificate and application did not constitute the whole contract. It was expressly agreed by the parties that the by-laws of the association should be a part of the contract, and the by-laws authorized the increase of rates.

Appellant first cites and relies on the case of *American Insurance Union* v. *Rowland,* 177 Ark. 875, 8 S. W. (2d) 452. In that case, among other things, we said:

"In the instant case the undisputed proof is that the appellant did not send to the insured a copy of the merger contract, and that it was not attached to the policy, but the letter sent stated that the appellant assumed the original contract, and that contract had the disability clause, and the insured was never notified until two years after the maximum assessment had been reached, and in the instant case the suit was based on the original certificate. In the Knight case it was based on the merger contract. * * * Mrs. Robinson never received the merger contract, and never heard of it. In the instant case, Mrs. Vandment never received it, and the only thing she ever heard about it was that the letter stated it was on file with the Insurance Department."

But we also said in that case: "Both parties to the contract are bound by it, but they are bound by all the provisions. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and give effect to that intention, if it can be done consistently with legal principles." *American Ins. Union* v. *Rowland,* 177 Ark. 875, 8 S. W. (2d) 452.

Policies of insurance should receive a liberal and reasonable construction in favor of the beneficiaries. But that does not mean you can select the certificate or the application alone in cases where both parties have agreed that the application, certificate and by-laws shall constitute the contract. The intention of the parties manifestly was that the by-laws constituted a part of the contract, and the parties were bound to know that the by-laws authorized a change in the assessments. If any doubt existed as to the construction of the contract, it should be interpreted against the party who has drawn the contract, that is, the insurance company. But in this case there can be no doubt about the meaning of the contract.

It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole

context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized, if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. *American Ins. Union v. Rowland,* 177 Ark. 875, 8 S. W. (2d) 452; 6 R. C. L. 837-8.

And in the instant case, if the entire contract is considered, there can be no doubt that the right to change or raise the rates was agreed to, and that the appellant authorized the officers of the company to act as his attorney in fact and cast any vote that he might cast.

The appellant next calls attention to *American Insurance Union v. Robinson,* 170 Ark. 767, 281 S. W. 393. In that case the court said:

"The rider which the Home Protective Association of Springdale, Arkansas, attached to the certificate of insurance issued to Mary S. Robinson by the American Mutual Benefit Association of Jonesboro was an absolute

assumption of liability under certificate No. 908, class 4, issued by the latter fraternal organization to Mrs. Robinson. Her certificate and roll numbers were changed for the purposes of designation and reference, but the rider did not attempt to change her membership or the terms of her original contract. It contained no provision requiring her to accept the rules and by-laws of the Home Protective Association of Springdale, nor did it contain a notification that her certificate would be controlled or governed by them."

This contract is made in conformity with the reinsurance contract between the Unionaid Life Insurance Company of Rogers, Arkansas, and the Mutual Aid Union of Rogers, Arkansas, of date December 14, 1926, filed with and approved by the Commissioner of Insurance and Revenues of the State of Arkansas, and certified to by him as fully protecting the interest of all the certificate holders of the Mutual Aid Union of Rogers, Arkansas. The notice also provided that liabilities were assumed, and would be carried out subject to the terms of the transfer.

We agree with the appellant that appellee had no rights which the Mutual Aid Union did not have at the time the reinsurance agreement was entered into, but we do not agree that the Mutual Aid Union could not raise the rates. This, as we have already stated, was expressly provided for in the by-laws which were a part of appellant's contract.

Appellant calls attention next to the case in 173 Ark. where an attempt was made to adjust rates. In that case we said:

"These contracts provided that, when the assured became a member or policyholder of the association, he should pay an initial assessment, which thereafter should increase and be payable at the rate of one cent per month during the membership until the 78th month from the date of the policy, when the maximum assessment would be reached." *Mutual Relief Association* v. *Ray*, 173 Ark. 9, 292 S. W. 396.

And we also said in that case: "Section 5 of the by-laws provides, in part, as follows: 'The revenue of this association shall be derived from a policy or incidental fee, the amount of which shall be fixed by the board of directors, and may be raised or lowered at any time as necessity may require. This fee shall be paid when the application is made for membership, and shall be used in defraying expenses incurred in the completion of a company in this association.'

"A mere glance at this section shows that it has no reference whatever to the assessments or premiums which the members had to pay in order to keep alive the policies of insurance. There is no provision in the policy or in the by-laws of the association which binds the policyholder to any by-laws of the association that might thereafter be adopted or any rules or regulations that it might become necessary for the association to adopt thereafter in order to conform to any future laws enacted for the government of mutual assessment benefit associations. Therefore it is manifest that the appellant had no authority, under the contract and by-laws of the association in existence at the time the policies in controversy were issued, and the laws governing assessment associations at that time, to increase the premium rates beyond those specified in the contracts of insurance."

The difference between that case and this is that the authority given there was to raise the incidental fee, and, as the court held, had no reference whatever to assessments. In that case there was nothing to bind the policyholder to any by-laws or any rules or regulations. In the instant case the appellant contracted that the by-laws should be a part of the contract of insurance, and agreed for a change of rates; agreed to be bound by the by-laws of the association, and designated the officers as his attorneys in fact to vote for him at the annual election.

148

We therefore conclude that there was no violation of the contract by the appellee. Since we hold that the appellee had a right to change the rates under the contract, and that there was no violation of the contract by it, it becomes unnecessary to discuss or decide the other questions discussed by the attorneys.

The chancellor's finding is supported by the evidence, and the decree is therefore affirmed.