**UNION PACIFIC RAILROAD COM-PANY, a corporation, Appellant,**

v.

**BRIDAL VEIL LUMBER COMPANY, a corporation, Appellee.**

**No. 13879.**

United States Court of Appeals, Ninth Circuit.

Jan. 3, 1955.

Rehearing Denied March 8, 1955.

Maguire, Shields, Morrison & Bailey, Randall B. Kester, James J. Kennedy, William E. Dougherty, Portland, Or., for appellant.

James Arthur Powers, Ferris Boothe, Portland, Or., for appellee.

Before HEALY, POPE, and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

This is a diversity case of two corporations, citizens of different states. Union Pacific was plaintiff in the trial court and is appellant here. Bridal Veil Lumber Company, defendant and appellee, operates a lumber mill at Bridal Veil, Oregon. The mill is on land leased from the Union Pacific and it is served by a spur track of the railroad.

On March 14, 1946, a Union Pacific engine was switching freight cars on the spur track. Daniel W. Fagan, a brakeman, was on one of the cars and was participating in the switching movement in the regular course of his employment by Union Pacific.

As the cut of cars on which Fagan was riding approached the private railway crossing of Bridal Veil, a lumber company employee came down a ramp from the mill (the ramp is parallel to the spur track) driving a lumber carrier known as a hyster and swung it on to the crossing in front of the oncoming cars. Fagan had been riding the lead car on a ladder on the side. However, just before the car collided with the hyster, Fagan had moved around the corner of the car and was on a ladder at the end of the car at the time of impact and he was injured in the collision.

Fagan pursued his employer, Union Pacific, in the courts of California, under the Federal Employers' Liability law, and recovered a verdict and judgment for $20,000. That story will be found in Fagan v. Union Pacific R. Co., 85 Cal. App.2d 583, 193 P.2d 776. Upon being sued by Fagan, Union Pacific tendered the defense to Bridal Veil. The latter declined to defend. Whatever total Fagan's judgment had reached when it was satisfied, Union Pacific secured some small discount from Fagan when it paid him $21,850 in full settlement. Bridal Veil agreed with Union Pacific that the compromise would not prejudice whatever rights the railroad had against the lumber company. So the case is before this court as if Fagan's judgment was for $21,850.

After paying Fagan, Union Pacific commenced this action against Bridal Veil to recover alternatively all or half of the payment.

Union Pacific grounds its claim for whole or partial indemnity upon two documents: The plant site lease dated October 6, 1942, and the industry track contract dated May 14, 1937. The lease is a renewal of a previous five year lease which had been executed simultaneously with the spur track contract. The prior lease has not appeared haec verba at any time in this litigation.

Pertinent language in the lease is as follows:

"That the Lessee shall hold harmless the Lessor and the leased premises from any and all liens, fines, damages, penalties, forfeitures or judgments in any manner accruing by reason of the use or occupation of said premises by the Lessee; and that the Lessee shall at all times protect the Lessor and the leased premises from all injury, damage or loss by reason of the occupation of the leased premises by the Lessee, or from any cause whatsoever growing out of said Lessee's use thereof."

And indemnity is covered in the industry track contract with this:

"The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees and agents, and to the person or property of any other person or corporation, while on or about the Track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto (or of any two or more of them if there be more than two), it shall be borne equally by the parties at fault."

Bridal Veil answered the Union Pacific complaint denying that there was any negligence on its part. At a pretrial conference a pretrial order was formalized setting forth the issues and contentions of the parties, the order providing that the order superseded the pleadings. The trial court chose to submit the case to the jury without any general verdict, using a special verdict with a number of interrogatories.

It is appropriate here to set forth the interrogatories submitted to the jury and its answers as follows:

"*Section I.* Was the defendant, Bridal Veil Lumber Company, or any of its employees, negligent in any of the following respects:

"1. In failing to keep the hyster under control?

Answer—No.

"2. In failing to keep a proper lookout for the railroad cars?

Answer—.................."

(Note: On this question the jury failed to agree, dividing six to six.)

"3. In failing to equip the hyster with brakes adequate to control its operation under the conditions then existing?

Answer—No.

"4. In failing to apply the hyster brakes properly?

Answer—No.

"5. In permitting the hyster to come down the ramp and collide with the railroad car?

Answer—No.

"6. In turning the hyster so as to collide with the railroad car?

Answer—No.

"7. In violating any agreement that may have been made to the effect that defendant would refrain from using the crossing while the switching was being done?

Answer—No.

"*Section II.* If you find that the defendant, Bridal Veil Lumber Company, was negligent in any of the respects mentioned in Section I, did such negligence cause, or contribute

directly to, the accident and the resultant injury to Daniel W. Fagan?

Answer—.................."

(Note: Not answered.)

"*Section III*. Was the plaintiff, Union Pacific Rairoad Company, or its employees, negligent in any of the following respects?

"1. In failing to station a watchman at the ramp crossing?

Answer—No.

"2. In failing to ring the bell upon the approaching the ramp crossing?

Answer—No.

"3. In failing to sound the whistle upon approaching the ramp crossing?

Answer—Yes.

"4. In moving said cars at an excessive speed as they approached the point of the collision?

Answer—Yes.

"5. In failing to have a flagman preceding the switching operation?

Answer—Yes.

"6. In failing to give any warning of its approach to the crossing?

Answer—Yes.

"7. In failing to have the locomotive under control?

Answer—Yes.

"8. In failing to supervise properly the movement of the cars?

Answer—Yes.

"*Section IV*. If you find that plaintiff, Union Pacific Railroad Company, was negligent in any of the respects mentioned in Section III, did such negligence cause, or directly contribute to, the accident and the resultant injury to Daniel W. Fagan?

Answer—Yes."

Using the interrogatory answers as a basis, the trial court entered findings of fact, conclusions of law and a judgment. It absolved Bridal Veil of all culpable negligence. As that court construed the lease and the industry track agreement, it necessarily held that without negligence of Bridal Veil there was no liability on its part under either agreement.

There are some cogent arguments that under the lease Bridal Veil became an insurer of Union Pacific against any liability that would not have occurred "but for" Bridal Veil being on the plant site. Also, Union Pacific can point out that the renewal lease is subsequent in time to the date of the industry track contract and therefore may argue that the later document should control.

However, this court believes that the most important factor or rule that should dominate construction here is that the indemnity provisions of the lease are in their nature general for the whole plant site[1]—while the track contract specifically deals with the operation of the track and goings-on about it. Therefore, this court lays the lease to one side and holds that whatever rights Union Pacific has over against Bridal Veil are under the track contract, the specific prevailing over the general.

At this point, it is well to allude to the fact that the same indemnity clause of the Union Pacific track contract was before this court four years ago in Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902, 20 A.L.R.2d 695. Reference is made to that decision. The applicability and interpretation of the clause will be dealt with herein after consideration of the jury's verdict and the trial court's subsequent action thereon. In passing, it may be noted that in Booth-Kelly no jury was involved and it was much easier for the trial court to make its findings and point up the issues of the case without the embarrassment of one important question being unan-

[1]. It is assumed for discussion, without knowing, that the lease of the plant site covers the land on which the track was laid.

swered by the jury in disagreement upon it.

Much of the claim of error below revolves around this instruction given by the trial court:

"Now I want to make a comment on the evidence and, as I told you before, this is only my opinion and you can accept it or reject it, as you see fit.

"A railroad crossing is a place of danger, whether it is a public crossing or, as in this case, a private crossing. And the operator of a motor vehicle, such as a hyster, should look and listen before attempting to cross a railroad track.

"At a public crossing the railroad has the right of way. That, in my opinion, means that as between a train and a motor vehicle the train has the right to use the track in preference to a motor vehicle. At a private crossing I believe that the railroad should likewise have the right of way.

"That is the extent of my comment on the evidence and, as I told you before, you can accept it or reject it."

Elsewhere in its general instructions the trial court instructed the jury that the hyster operator was under the duty "to keep such a lookout as would permit him to avoid accident in the exercise of reasonable care".

The following observations are made concerning the "comment" and the gensral instructions.

■ 1. The trial judge twice in the comment has advised the jury it needs to pay no attention to him. And this is in addition to a prefatory statement that when he expresses his opinion the jury is not bound by any such statement. In commenting on the evidence, a trial judge should make it clear that the jury is not bound by his opinion. But too much diffidence in the matter can lead to a jury thinking that the trial judge is issuing an invitation to pay no attention to him.

2. If the evidence which was not brought up shows that the spur parallels the main line and that the spur is frequently used, then the court probably should instruct the jury that the switching train has the right of way.

■■ 3. The general instruction on lookout given elsewhere in the instructions to the effect that the hyster operator should "keep such a lookout as would permit him to avoid accident in the exercise of reasonable care" is correct. The severities of Baltimore & Ohio R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, have been relaxed or restricted to its particular facts. Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149. It would not seem that the hyster operator was obligated to run down the ramp on foot and take a look down the track before proceeding down the ramp with Bridal Veil's hyster and across the track. It was a jury question to determine under the circumstances how much looking-out the hyster operator should have done and whether he did enough. The trial judge was entitled to express his opinion as such as to how much "looking-out" the hyster man should have done and whether he had done enough, but it would be better to handle the *duty* to "lookout" as a matter of law.

■ 4. The comment on the evidence intertwines matters of law into the comment in such a way that law and opinion are not sharply differentiated. And the comment instruction has a possible interpretation that the jury need not pay any attention to matters of law therein stated, as distinct from the judge's opinion on the evidence. (Both parties appropriately excepted to the instruction.)

5. This court, however, would not reverse the case on this instruction believing on the whole that the jury was well instructed; at least, if error there was, it was not substantial. But on a retrial the instruction, if given again, should be modified in the light of what has been herein said.

Coming to the unanswered question concerning Bridal Veil on which the jury evenly divided, the court felt justified in going ahead and making findings and entering judgment. Repeating, that question was as follows:

"Was the defendant, Bridal Veil Lumber Company, or any of its employees, negligent in failing to keep a proper lookout for the railroad cars?"

Arguments are made by appellee that the court did not need to resubmit the question to another jury. It says:

1. An answer to this question will be presumed which is consistent with the other answers of the jury; that the jury exculpated Bridal Veil on all other points and, therefore, a "no" answer should be read into this question.

2. The question is really answered by the answers to the other questions.

3. The plaintiff somehow is to blame for not insisting that the jury be sent back for further deliberation.

The foregoing points are not quoted literally, but it is believed a fair summary has been made.

It is true that Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. has eliminated many of the inherent dangers of special verdicts consisting solely of answers to interrogatories unaccompanied by a general verdict. For example, no longer can a party failing to request the submission of a question to a jury later complain of the absence of the question.

But to say "49(a)" has improved the usability of the special verdict is not to say the special verdict no longer has pitfalls. In submitting the special verdict, the trial court, in essence, told the jury to answer all questions upon which it could agree unanimously and not to answer those it could not agree upon. That is a statement of the obvious and initially is about as far as the trial judge needs to go. But when the jury is in disagreement as to one question, when it is readily apparent that the failure to answer one question is not an oversight, and it is apparent the disagreement has lasted for some time, it is peculiarly the function of the trial judge to decide whether to discharge the jury or, within the limits of legitimate wheedling, try to get the jurors to agree on an answer. It may be assumed that counsel for Union Pacific, outside the presence of the jury, could have made a request to the court that the jury be returned to its room for further deliberation; yet under the circumstances it cannot be said that a failure to make such a request was the waiver of a right. Cases on the right to poll a jury being waived by failure to so request do not seem apposite. Such a right is one peculiar to the parties. How long a jury should be kept together when it has failed to agree is peculiarly the business of the court. Requests from counsel may not be inappropriate. But certainly little duty rests upon counsel in this respect.[2]

To this court, it seems that the disagreement of the jury on one vital question left a gaping hole in the special verdict. Though it can be argued that other questions necessarily implied the element of keeping a proper lookout it is obvious in submitting the question of lookout the trial judge thought it meant something different and apart from the other questions. And the jury's failure to agree on "lookout" buttresses this conclusion and shows it must not have included "lookout" as a factor in the other questions. Therefore, the conclusion is that it was error in the face of the unanswered question for the trial court to thereafter "go it alone"

2. What is said here, of course, would not be appropriate in the case where a jury from oversight did not fill in a blank in a verdict. Also, it might not be appropriate where the jury mistakenly determined that it did not need to answer a question. In such cases, any party having knowledge of the deficiency might be deemed to have waived jury trial on a given question by not insisting on jury trial thereof.

and dispose of the case. In view of this, the judgment must be reversed for a new trial. To do other than send the case back for a new trial when decision on a vital issue by the jury is missing would deprive the parties of the jury trial to which they are entitled constitutionally.

Returning to the construction of the track contract clause on indemnity, it is difficult to anticipate all situations, not knowing what the jury will eventually decide. The opinion in Booth-Kelly, supra, sets forth this court's construction of the indemnity clauses common to the Southern Pacific contract in that case and to Union Pacific here. Following that case it is here held that the rights of indemnity, if any, must be found in the contract which supersedes the common law of Oregon (insofar as the contract contravenes it) by specifically dealing with the subject. It is also here held that the contract being for service that the railroad as a common carrier is not required to give, the contract is not void as against public policy.

In Booth-Kelly, this court, addressing itself to that portion of the clause which read [183 F.2d 907]:

"Industry also agrees to indemnify and hold harmless Railroad for loss, damage, injury or death from any act or omission of Industry, its employes or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said Track * * *."

held that the clause was to be interpreted as having been written in the light of the common law and that this much of the clause was intended to cover the same ground as Section 95 of the Restatement of the Law of Restitution which reads as follows:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it is the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition." [3]

That portion of the clause which reads as follows:

" * * * and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

was held to apply to the factual situation of Union Stockyards Co. of Omaha v. Chicago, B. & Q. R. Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453; and to modify for the contracting parties Section 102 of the Restatement of Law of Restitution which reads as follows:

"Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other."

■ Sub silentio, the import of Booth-Kelly is surely that Bridal Veil, as between it and Union Pacific in a situation where both were actors, is not to be held to contribute or indemnify absent negligence on its part or on the part of its servants which is a contributing cause of the accident.

■ If the answers of the jury should eventuate that the court could

3. This rule is followed in Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 16 S.Ct. 564, 40 L.Ed. 712 and City of Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404.

conclude therefrom that both Union Pacific and Bridal Veil were both primarily or actively negligent, then Booth–Kelly indicates that Bridal Veil should contribute one-half. If the answers indicate primary or active negligence on the part of Bridal Veil and no negligence or passive or secondary negligence on the part of Union Pacific then the railroad would be entitled to full indemnity. vice versa, with no negligence or passive or secondary negligence on the part of Union Pacific there would be no recovery over against Bridal Veil.

In sum, in this court's view the entire clause of the track contract enunciates the common law on indemnity and contribution except where the parties are in pari delicto under Section 95, Restatement of Law of Restitution; then they divide the loss equally.

 This court should be and is reluctant to hold the track contract one of insurance. If that was actually intended it would be easy to say so in unmistakable language in the contract. It is possible that the railroad sincerely feeling that the hyster operator was the one wholly to blame turns to contract construction and comes up with a result that the contract is one of insurance. But if the contract were spelled out as one of insurance then you might find the shippers hiring trucks instead of railroad cars.

It is not for this court to draw the questions for the jury, but it may be observed that possible combinations of answers in the set of questions used upon the trial in the district court may still leave something beyond clerical work for the trial judge in framing findings or a judgment. It still may be his question and his alone under certain possible answers to the questions to determine which category of liability the parties are in.

It would seem appropriate here that all issues be retried. The judgment is reversed for further proceedings consistent with the opinion herein.

### On Petition for Rehearing

Before HEALY, POPE, and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Reference is made to the opinion of this court rendered on January 3, 1955.

This court has reversed the judgment below and directed a new trial. Now Bridal Veil, appellee, and defendant in the trial court, moves for a rehearing. The motion for rehearing is denied.

Two of appellee's points on the motion for rehearing, however, should be noticed. This court, in its decision, has held that the failure of the jury to answer one special interrogatory left too big a hole in the verdict of the jury for the trial court to proceed on to judgment. Bridal Veil now says that there was no evidence for the case to go to the jury on the question which the jury failed to answer. Neither party brought to this court a transcript of the testimony heard at the trial.

 In the absence of a record of the testimony, this court assumes that the evidence supports a complete verdict. Bernards v. Johnson, 9 Cir., 103 F.2d 567; Rickard v. Thompson, 9 Cir., 72 F.2d 807. It is a necessary corollary that in the absence of a record it must be assumed that there was sufficient evidence in the testimony to justify a trial judge in submitting any given interrogatory within the issues of a case. If the failure of the jury to agree on one vital interrogatory actually was harmless error, appellee could have demonstrated the fact by including the testimony in the transcript of proceedings.

The appellee complains bitterly of the necessity of proving Union Pacific's negligence again. This is required by the decision herein. (Each party has made issues that the other was negligent.) But really one single event is involved. It does not appear appropriate in such a case to let one jury look at one side of the occurrence and a second jury look at the other side of the same incident.