ARK. POWER.& LIGHT CO. *v.* MURRY.

5-2011                            331 S. W. 2d 98

Opinion delivered January 25, 1960.

*Joe W. McCoy* and *House, Holmes, Butler & Jewell,* for appellant.

*William C. Gilliam,* for appellee.

CARLETON HARRIS, Chief Justice. In August, 1922, Arkansas Power and Light Company,[1] appellant herein, obtained a right-of-way permit from W. H. Woodall and wife, owners of a certain 40 acres in Hot Spring County. The right-of-way covered 72 feet in width over the Woodall lands, giving the company the right to construct and maintain a line across same. In 1952, appellant found it desirable to enlarge and improve the transmission line across this property, and in contemplation of this improvement, obtained from the owner a new permit, which granted a similar right-of-way across the lands, with the right to clear a right-of-way 100 feet in width. In 1954, Orvall and Helen Murry, appellees herein, acquired title to the above 40 acres, with full knowledge of the existence of the two permits. In January, 1957, appellant company went onto the lands, clearing the right-of-way to a width of 100 feet, and also cutting additional trees outside the right-of-way, which the company considered a hazard to the line. Suit was instituted by the Murrys against appellant company, seeking damages for trees cut outside of the right-of-way, and also seeking damages for alleged damage caused to the land by the company, through the use of heavy clearing equipment. The jury awarded damages in the sum of $800,[2] and from such judgment comes this appeal. For reversal, appellant argues two points, as follows, to-wit:

"I.

The Court Erred in Submitting Over Defendant's Objections, Plaintiffs' Instruction No. 2 as Modified.

---

[1] Then known as Arkansas Light and Power Company.

[2] This amount represented only timber damage. Testimony had been introduced showing that $100 damage had been done to the land by the use of the equipment, but the only instruction sought by appellees on this point was refused by the court. This issue, therefore, was not submitted to the jury, and appellees have filed no cross-appeal on this point.

## II.

The Verdict of the Jury and Judgment Thereon Was Not Based on the Evidence and Was Excessive—The Court Erred in Denying the Motions for New Trial."

### I.

Appellant contends that under the provisions of the right-of-way permit, it was permitted to remove timber not only from the 100 foot width, but also to remove timber outside the right-of-way which might be considered a hazard to the line. The permit cites a consideration of "thirty dollars and other good and valuable considerations, to us cash in hand paid, \* \* \*'' and the provisions pertinent to this litigation are as follows:

> "The rights hereby conferred provide for the privilege and authority to enter upon said lands for the purpose of constructing and building said pole line, maintenance and operation thereof, with the right to clear and keep clear a right of way *one hundred*[3] feet in width, and to remove all other timber and obstructions that may interfere with the use of said line or that may or might be a hazard to the use of the same, and for the repairing, reconstructing, operating and the removing of same at any and all times."

Further:

> "The following items are included in this settlement: *The right to change from a single pole line to a double pole line. Value of use of right of way and timber damage.*[3a] Said Grantee agrees that it will pay other damages not included in above settlement inflicted by it in the construction and maintenance of said line."

Appellant emphasizes the word "other" in the permit, and argues that the cutting of trees considered hazardous to the line was included under the consideration paid by

[3] *and* [3a] The form is printed, but the italicized portions were filled in by hand.

the company. Of course, appellees in opposing this contention, quickly calls attention to the fáct that such a construction is most illogical; *i. e.,* it is not logical that a landowner would give a company a right to perhaps cut any number of valuable trees, outside the right-of-way, over an unlimited length of time[4], for a consideration of only $30. Appellant points out that the instrument also recites "other good and valuable considerations", but, were the consideration actually a greater amount, it would appear that appellant would have placed in evidence the amount of the actual and true consideration, particularly since the small consideration, among other things, is one of the points relied upon by appellees in their contention for a different interpretation of the contract. If appellant's interpretation is correct, the power company is not limited to a 100 foot right-of-way, for if it is entitled to cut hazardous trees outside this 100 feet area without paying additional compensation—then it actually, in effect, has a right-of-way wider than that granted by the 100 feet, since but few, if any, trees in the immediate adjacent area would be permitted to grow to maturity. It is, of course, admitted that the company had the right to cut trees within the right-of-way without payment of further compensation; appellees, while not conceding that apellant had the right to cut trees beyond the 100 foot right-of-way, do state "that the most the 1952 permit could have done by the clause set out earlier was the right to cut 'danger trees' off of the 100 foot right-of-way, and then pay for the damage to the land and trees at a later date." This view was apparently taken by the Murrys in their interpretation of the contract, for in bringing suit, they did not seek double or treble damages. We think, without question, that the language in the permit is subject to more than one construction, *i. e.,* is ambiguous, and we have held many times that in case of doubt, or ambiguity, a contract or agreement shall be interpreted against the party who prepared the instrument. See *American Insurance Company* v. *Rowland,* 177 Ark. 875, 8 S. W. 2d 452.

---

[4] The right-of-way permit remains in effect unless permanently abandoned by the grantee.

Likewise, it is well settled that in construing a contract, the intention of the parties is to be gathered, not from some particular phrase, but from the whole context of the agreement. This agreement was prepared by the appellant company, and consists of a printed form containing several blank spaces to be filled in by hand. Following the first pertinent clause, heretofore set out, relied on by appellant, we particularly observe the language in the second clause set out herein, as follows: "* * * said grantee agrees that it will pay other damages not included in above settlement inflicted by it in the construction and maintenance of said line." Considering that the language of the instrument leaves doubt as to the intention of the parties, and noting the other factors, previously mentioned, we have reached the conclusion that the power company, under the permit, is given the right and authority to cut trees beyond the area included in the right-of-way, and which may be considered hazardous to the maintenance of its line—but it must pay for the value of the trees. This clause, so construed, has the value to the company of permitting it to cut these trees without being subject to double or treble damages, and we think the instrument makes manifest that intention.

The trial court instructed the jury as follows:

"You are instructed that the measure of damages for the destruction of growing trees is the difference in the value of the land outside the one hundred foot right-of-way with and without the trees. Therefore, if you find that defendant destroyed growing trees on land owned by plaintiffs and not subject to defendants' right-of-way easement, you will set his damages at the difference in the value of the land outside the one hundred foot right-of-way with the trees growing and without the trees growing."

Since we have concluded that the right-of-way permit did not give the company authority to cut beyond the 100 feet without payment of additional compensation, it follows that the court's instruction was correct. As we

stated in *Kyle* v. *Zellner*, 215 Ark. 349, 220 S. W. 2d 806 (1949):

> "The measure of damages for the destruction of young growing trees is the difference in the value of the land with and without the trees. * * * If that rule is applicable the decree is without support evidence, for there was no testimony as to land values.

The rule is evidently intended to compensate the landowner when his timber is so immature that its value in the market is materially less than its potential worth through continued growth."

Appellant's contention is held to be without merit.

## II.

Testimony on behalf of appellees was presented by Orvall Murry, his wife, and Murry's father, Ralph Murry, and all testified that the value of the entire 40 acres was $2,000 before the cutting, and $1,200 after the cutting. The witnesses stated that trees were cut for an additional width of 25 feet on each side along the entire 100 foot right-of-way. Mrs. Murry testified that 88 pine trees were cut on either side of the original 72 foot right-of-way. None of these witnesses measured or scaled any of the timber cut. Appellant states that the testimony of appellees, relative to the $800 damage, includes trees cut within the right-of-way, as well as those outside the right-of-way, and that there was no evidence to support the amount of damage claimed by the Murrys. The testimony offered by the company reflected that 770 feet of pine, 1,150 feet of hardwood, one cord of pine billets, and half a cord of oak or gum billets were cut. Its evidence showed the market value of the timber to be $40 per thousand for pine, $15 per thousand for hardwood, about $5 per cord for pine pulpwood, and $1 to $2 per cord for gum or hardwood billets. This evidence accordingly indicated that less than $55 worth of timber was cut, including that cut both within and outside the 100 foot right-of-way.

Of course, we give the appellees' evidence its strongest probative force, but even so, the award is obviously excessive. True, the Murrys stated that the difference in the value of the land before the cutting and after the cutting was $800, but this figure is not borne out by an analyzation of their own testimony. The value of the forty acres prior to the timber cutting, was placed by appellees at $2,000, which sets a value of $50 per acre. Testimony on behalf of appellees showed the right-of-way to be about 1,320 feet long, and that trees were cut approximately 25 feet on either side of this right-of-way. It follows that the total acreage (outside the right-of-way) from which trees were cut, amounted to something less than two acres. This fixes the value of the land beyond the right-of-way from which the trees were cut at less than $100. The only evidence contrary to this compilation was offered by Ralph Murry, but even his testimony is completely in conflict. From his testimony:

"Q. Well, now, what part of that Eight Hundred Dollars would you say was done off of the right-of-way?

A. Well, I'd say at least a hundred dollars of it was done outside of the right-of-way.

Q. How much of it was done on the right-of-way then?

A. Seven Hundred.

Q. Seven Hundred?

A. Yeah.

Q. Now, how much—Now, that's damage to the land you are talking about?

A. No, the land and timber."

Subsequently, however, he testified as follows:

"Q. How much damage do you attribute to the timber cut outside the right-of-way?

A. I would say the damage to the timber was Six Hundred Dollars ($600.00), and about Two Hun-

dred Dollars ($200.00) to the right-of-way and to the land, that damage would be my judgment on it.''

However, the testimony on the part of appellees reflected that a large number of the pine trees cut were seed trees, and Mrs. Murry testified that these were ''cleared out''. There was also testimony to the effect that the timber at the right-of-way grows faster than timber located in the woods because it grows along the edge and can get more air and sunlight. We think, from the record before us, that an award of $300 would be liberal compensation for the damage suffered.[5] Appellees, of course, if they feel aggrieved at the reduction, have the privilege of re-trying the case, and offering more detailed proof in support of the alleged damage.

The judgment is affirmed on the condition that remittitur is entered as indicated within seventeen calendar days; otherwise the judgment will be reversed and the cause remanded for a new trial.

JOHNSON, J., dissents as to the remittitur.

---

[5] Even if the evidence justified the amount of damages awarded, the judgment would have to be reduced, for appellees, in filing complaint, only sought $750 for alleged damage to the timber.