Nina N. ANTHONY and Graydon Anthony, Partners, d/b/a Graydon Anthony Lumber Company, Appellants,

v.

LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellee.

No. 17020.

United States Court of Appeals
Eighth Circuit.

April 30, 1963.

Boyd Tackett, Shaver, Tackett & Jones, Texarkana, Ark., for appellant.

LeRoy Autrey, Texarkana, Ark., was with him on the brief.

Bradley D. Jesson, Hardin, Barton & Hardin, Fort Smith, Ark., for appellee and P. H. Hardin, of Hardin, Barton & Hardin, Fort Smith, Ark., was with him on the brief.

Before VOGEL and VAN OOSTERHOUT, Circuit Judges, and VAN PELT, District Judge.

## PER CURIAM.

This action was brought by the Railroad to recover from the Lumber Company partners amounts paid an injured railroad brakeman, Herman Cloudy, under the Federal Employers' Liability Act. The case was tried to the court without a jury. The court found for plaintiff in an opinion reported as Louisiana & Arkansas Ry. v. Anthony, D.C. W.D.Ark., 199 F.Supp. 286.

The questions presented on this appeal are:

1. Were appellants guilty of negligence proximately causing Cloudy's injuries?

2. Was appellee free from negligence and if not, does appellee's negligence prevent a recovery?

3. Does the agreement of the parties called the "Industry Spur Track Agreement" require appellants to fully indemnify the railroad for the amounts expended because of Cloudy's injuries?

4. Did the trial court err in finding appellee guilty of passive negligence only and in finding appellants guilty of active negligence?

The railroad has served the Anthony Lumber Company near Hope, Arkansas, since 1941. At that time an agreement known as an "Industry" or "Spur Track Agreement" was entered into between the Railroad and the Lumber Company and a 671-foot spur track was laid by the Railroad. In 1944 a 66-foot extension was laid pursuant to a supplemental agreement, which so far as material here is like the 1941 agreement. A truck loading shed was constructed just west of the planing mill and south of the spur track at this time. In 1956 the railroad moved the spur track about eight inches to the north and away from the loading shed because some of appellee's boxcars had been striking the shed. In 1957 another "Industry Track Agreement" was entered into extending the track westward 185 feet.

On May 15, 1959 when the Railroad was moving out one or two boxcars of woodchips, at a location a car length or so west of the loading shed, brakeman Cloudy fell from a car and received severe fractures and injuries which resulted in the amputation of his right leg above the knee joint. His claim against the Railroad under the Federal Employers' Liability Act was settled for $35,700.00 and payment of his hospital and medical bill of $2,018.50. This suit was brought to recover these amounts and for $1,500.00 attorneys fees and expenses. Judgment was for plaintiff.

The factual dispute at the trial centered around the cause of Cloudy's fall from the boxcar. In turn this dispute revolves in part around two conflicting statements given by Cloudy as to whether or not his head struck a portion of the loading shed. Cloudy did not appear as a witness. By agreement his statements were received as evidence.

The case was tried to the court without a jury. The court found for the railroad.

The errors assigned, briefly stated, are that notwithstanding the court's findings of fact and conclusions of law:

1. There is no substantial evidence that Cloudy struck any portion of the loading shed.

2. The proximate cause of Cloudy's injuries was not any negligent act or omission of the Lumber Company.

Discussed as a part of this assignment is the contention that appellee Railroad's negligence was the proximate cause.

3. The "Spur Track Agreement" does not on the facts of this case require full indemnification.

As a background for the factual discussion we need only to review briefly certain principles which have from time to time been stated by this court and which are well set forth in Geer-Melkus Construction Co. v. United States, 8 Cir., 302 F.2d 181, 183, as follows:

"Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. requires that findings of fact by the trial court 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'

"Such rule is based upon sound legal principles and has been uniformly applied by the courts. We have repeatedly held that we will not attempt to substitute our judgment, based upon the cold record, for that of the trial court in determining credibility of witnesses and disputed fact issues. The responsibility for determining credibility and disputed fact issues is vested in the trial court. The trial court's fact findings can be set aside only upon clear demonstration that they were without substantial evidentiary support or induced by an erroneous view of the law. Fact findings supported by substantial evidence cannot be upset. Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223, 227; Nelson v. Seaboard Surety Co., 8 Cir., 269 F.2d 882, 886; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 138.

"The trier of fact, whether court or jury, is the sole judge of the credibility of witnesses and the weight to be given their testimony. Upon appeal the evidence, including such inferences as may be reasonably drawn therefrom, is to be viewed in the light most favorable to the prevailing party. United States v. Stoppelmann, 8 Cir., 266 F.2d 13, 17; Pendergrass v. New York Life Ins. Co., supra."

The trial court in its findings stated in part:

"There is a factual dispute as to whether Cloudy was struck by an object at all, or whether the object, if one did strike him, was a part of one of the cars or a stationary object. There are two facts which convince the court that it was a stationary object, to-wit, the western corner of the roof line of the truck loading shed, immediately adjacent to the nearest rail of the spur track. which struck Herman Cloudy on his head, thus causing him to fall from the ladder between the cars into the path of the wheels of the last car. The first fact is that the only injury above his waist was a deep gash on the right side of his head. The second fact was that a chipped or splintered place was noted on the end rafter which supported the overhang or roof extension at the west corner of the truck loading shed."

It is this finding which appellants assigned as their first error. In addition to the evidence mentioned by the trial court, namely, the injury on the right side of his head and a chipped or splintered place on the end rafter supporting the roof overhang, we have conflicting statements of Cloudy. At first he said:

"A. * * * I got on the car, the last car, and got up on the inside, you know, between the cars to go up and let the brake off, and when I started out something struck me in the forehead up there.

* * * * * *

"Q. You don't know what hit you?

"A. I don't know what hit me.

"Q. Do you think the loading shed hit you?

"A. I don't see how it could. * * * I don't know what could have struck me.

* * * * * *

"Q. How about the place you had to work there? For the purpose for

which you were working, such as coupling the cars together, doing the work of a brakeman. Would you say it's a safe place to work?

"A. Under the conditions—If you work on the other side, there's a big dump there that you were continually sliding down that dump. It was just about as safe on one side as the other. That is, if you get on the car and get out of the way of the shed.

\*   \*   \*   \*   \*   \*

"Q. There was nothing in connection with that that had anything to do with the accident?

"A. No, sir. I don't know what hit me. After I got on the car I could remember something hitting me, but I don't know what."

He later said:

"With further reference to my accident of May 15, 1959, at Hope, Arkansas, I should like to state that I do not know just what hit me across the head, and knocked me from the car, but it was some part of the shed or building just adjacent to this spur track. It just had to be some part of that building and I believe it was the roof line just above the railroad cars, at the point where the accident took place."

"Regarding the accident I had on May 15, 1959 at Hope, Arkansas while I was employed by the L and A Railroad Co., I fell from one of the top of the box-cars when I was struck on the head by an object and fell to the ground under the train suffering injury. The train was going about 5 mph at the time I fell. I can't recall on which side to the train I fell. I was somewhere along the side of the shed at the time I was hit. I don't know exactly where since it happen so suddenly. The box-car I had just coupled was 20–30 feet beyond the end of the shed. I had just finished coupling the cars and I was climbing up the

box car to walk on the top of one when I was struck. I had to climb on top since the shed was too close to the track to be on the side of the cars."

Appellants say that the evidence fails to establish without conjecture and speculation that any part of the shed hit Cloudy but rather it affirmatively shows that he was *not* struck by any part of the loading shed. This last statement follows, it is claimed, from the fact that his forehead was injured rather than the back of his head.

In McAfee v. Felts, 8 Cir., 295 F.2d 716, this court had before it two statements of an injured plaintiff, a pedestrian. In one she said she saw the automobile which struck her when it was about 40 feet away and approaching the intersection where she was struck. In the other statement she said she first saw the car when about one foot away. The court said the effect of the inconsistency was "for the jury to determine and their conclusion may not be disturbed here."

■ We regard Cloudy's testimony as conflicting. The trial court believed that he was hit by the shed and so found. Such a finding was supported by one of Cloudy's statements and by certain physical facts pointed out by the court. Such a finding is not clearly erroneous and may not be disturbed here

Proper consideration of the remaining issues requires setting out the material portions of the spur track agreement entered into between the appellant shipper and the appellee railroad, which are:

"5. \* \* \* Shipper shall prevent anyone, except Carrier, as well as refrain from placing or keeping any obstruction closer vertically than 25 feet to the nearest rail of Switch, or closer horizontally than 8½ feet to center line of Switch. Carrier's knowledge of such obstructions and its continued operation on Switch shall not be a waiver of this covenant, nor of Carrier's right to re-

cover for such damages to persons or property as may result therefrom.

\* \* \* \* \* \*

"6. It is understood that movement of railroad locomotives involves some risk of fire, and Shipper assumes all responsibility for and agrees to indemnify carrier against loss or damage to property of Shipper or to property upon Shipper's premises, regardless of railroad negligence, arising from fire caused by locomotives operated by Carrier on Switch, or in its vicinity for purpose of serving Shipper, except damages to premises of Carrier and to rolling stock belonging to Carrier or to others, and to shipments in course of transportation. Shipper also agrees to indemnity and hold harmless Carrier from loss, damage or injury from any act or omission of Shipper, Shipper's employees or agents, to the person or property of the parties hereto and their employees and to the persons or property of any other person or corporation, while on or about Switch; and if any claim or liability other than from fire shall arise from joint or concurring negligence of both parties hereto it shall be borne by them equally.

\* \* \* \* \* \*

"10. Every undertaking herein shall have the effect of a covenant. \* \* \* Either party may waive any default at any time of the other without affecting or impairing any rights arising from any subsequent default. \* \* \* "

The trial court found that the erection of the building with which Cloudy came in contact constituted a violation of the minimum clearances which paragraph 5 of the agreement required the shipper to observe; that such building was erected subsequent to the building of the initial spur track; that it constituted an obstruction; and that such violation constituted negligence on the part of the shipper, which negligence was the proximate cause of Cloudy's injuries. Such findings are supported by substantial evidence.

The court found that the railroad was passively negligent in failing to provide Cloudy with a safe place to work. While the trial court classified the shipper's negligence as active and the railroad's negligence as passive, for reasons hereinafter set out we deem it inappropriate and unnecessary to classify the type of negligence of the respective parties. We assume for the purpose of this appeal that the railroad is guilty of negligence which contributed to Cloudy's injuries. We observe that any negligence on the part of the railroad did not go to the extent of constituting wanton or wilful misconduct.

It is the shipper's contention that the spur track agreement affords no basis for granting the railroad indemnity for damages which are caused at least in part by the railroad's own negligence. The answer to this problem lies in the construction of the spur track agreement.

The parties agree that the contract is an Arkansas contract and that Arkansas law controls. No controlling Arkansas cases bearing directly upon our present problem have been cited or discovered. Under such circumstances, we give great weight to the views of an able and experienced trial judge upon doubtful questions of local law.

The question of the validity of the contract is not raised upon this appeal. In the trial court, shipper contended that contracts which indemnify a person against his own negligence, under circumstances here present, are contrary to public policy and void. The trial court properly rejected such contention for the reasons set out on pages 292–293 of 199 F.Supp. The issue then is whether the spur track agreement provides indemnity in the present situation. The rules governing the requisites, validity and construction of contracts generally apply to indemnity contracts. 42 C.J.S. Indemnity § 5, p. 569, states:

"The language employed must clearly and definitely show an inten-

tion to indemnify against a certain loss or liability; otherwise it is not a contract of indemnity, as where the terms of the contract clearly show, not an intention to indemnify, but a direct promise to pay a certain sum of money or to perform a certain act. If the intention to indemnify is reasonably clear, however, it is not necessary that the contract should be drawn in any particular form of words or be expressed in technical terms. If the intention to indemnify is apparent from the whole instrument, it will be construed as a contract of indemnity, although it is called by some other name by the parties."

See annotation "Construction and effect of liability exemption or indemnity clause in spur track agreement." 20 A.L.R.2d 711. At page 715, the annotator states:

"Consequently, it may be stated as a general rule that an indemnity clause in a spur track agreement protects the railroad from liability for loss caused by its own negligence provided the language of the clause shows that this was the intention of the parties. * * *"

The provisions of the spur track agreements vary considerably from case to case. The phraseology used has an important bearing upon the construction of the contract including the indemnity provisions. Many cases involving spur track contracts have held that indemnity will be found which protects the railroad from losses caused in part by its own negligence where the contract construed as a whole fairly shows the intention of the parties to provide for such protection. Seaboldt v. Pennsylvania R. R., 3 Cir., 290 F.2d 296, 297–298; Baltimore & Ohio R. R. v. Alpha Portland Cement Co., 3 Cir., 218 F.2d 207, 211–213; Chicago, R. I. & P. R. R. v. Dobry Flour Mills, 10 Cir., 211 F.2d 785, 788; Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. R., 8 Cir., 199 F.2d 725, 730–731; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902; Deep Vein Coal Co. v. Chicago & E. I. Ry., 7 Cir., 71 F.2d 963; Buckeye Cotton Oil Co. v. Louisville & Nashville R. R., 6 Cir., 24 F.2d 347; Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693; John P. Gorman Coal Co. v. Louisville & Nashville R. R., 213 Ky. 551, 281 S.W. 487.

In Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, a case involving the indemnity afforded a ship owner against a stevedoring company under maritime law, the Supreme Court, holding a fact issue on indemnity was presented, stated in part:

"Petitioner's claim for indemnity primarily rests on the contractual relationship between it and respondent. While the stevedoring contract contained no express indemnity clause, it obligated respondent 'to faithfully furnish such stevedoring services as may be required,' and to provide all necessary labor and supervision for 'the proper and efficient conduct of the work.' As this Court said in Ryan Stevedoring Co. v. Pan-Atlantic S.S.Corp. [350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133], supra, such language constitutes 'a contractual undertaking to [perform] "with reasonable safety," ' 350 U.S., at 130 [76 S.Ct. at 235, 100 L.Ed. 133], and to discharge 'foreseeable damages resulting to the shipowner from the contractor's improper performance.' 350 U.S., at 129, footnote 3 [76 S.Ct., at 235, 100 L.Ed. 133]. Petitioner contends that a breach of this undertaking by respondent caused the injury to the longshoreman, and that petitioner's liability resulting from the breach was 'foreseeable.' " 355 U.S. 565, 78 S.Ct. 440, 2 L.Ed.2d 491.

See also Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

Restatement, Restitution, provides:

"§ 76. General Rule.

"A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

"§ 95. Person Responsible for a Dangerous Condition.

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

See also comments to said sections.

We now look to the facts in this case in light of the applicable law above stated. The trial court made the ultimate finding that the railroad is entitled to full indemnity. In support of this finding, the trial court states:

"There is no doubt but that the provision in paragraph No. 5 with reference to the minimum clearances has been violated by the defendant industry in the present case, making it liable to the plaintiff railroad, regardless of the latter's knowledge of such violations." 199 F.Supp. 298.

▪ It is apparent that the trial court determined that the parties had contracted for indemnity against losses caused by the shipper's failure to observe his covenants as to obstructions. In our view, such construction of the contract is fully warranted. In paragraph No. 5 the appellant clearly covenants to keep the track free from obstructions for specified minimum clearances. The parties then go on to say, "Carrier's knowledge of such obstructions and its continued operation on Switch shall not be a waiver of this covenant nor of Carrier's right to recovery for such damages to persons or property as may result therefrom." It is established beyond question that the shipper erected a building which violated the clearance covenant and that such violation was a substantial factor in producing Cloudy's injuries.

The portion of the agreement relating to non-waiver manifests an intention of the parties that knowledge of the obstruction and continued use of the switch track shall not be a waiver of the covenant. Any negligence on the part of the railroad here did not go beyond such waiver. The agreement goes on further to say that the knowledge and use of the switch track shall not be a waiver of the railroad's right to recovery for such damages as may result therefrom. We consider this a clear expression by the parties of their intent to provide complete indemnity for damages caused by violation of the obstruction covenant, and to further provide that such indemnity be operative despite the fact that the railroad continued to use the tracks with knowledge of the obstruction.

▪ It is quite true that the intention of the parties must be gathered from an instrument as a whole. Shipper, in support of its contention that recovery should be limited to contribution, relies upon the last clause of paragraph 6, to-wit: "; and if any claim or liability other than from fire shall arise from joint or concurring negligence of both parties hereto it shall be borne by them equally." Immediately preceding the language just quoted is a provision in which the shipper specifically agrees to indemnify and hold the carrier harmless from any loss, damage or injury arising from any act or omission of the shipper. This indemnity language supports and strengthens our construction of paragraph 5. We believe that the trial

court has adequately demonstrated, at pages 293 to 298 of 199 F.Supp., why the contribution clause of paragraph 6, relied upon by the shipper, cannot reasonably be construed to modify or detract from the indemnity provision of the agreement. The indemnity and contribution clauses found in Dobry Flour Mills, Booth-Kelly and the Alpha Portland Cement cases, supra, are almost identical to those found in paragraph 6 of the present agreement. In each of such cases, the court found the contribution clause did not wipe out or supersede the indemnity provisions.

■ When the contract is viewed as a whole, we do not believe that it can be fairly said that the contribution provision relied upon by the shipper is inconsistent with the indemnity provisions of the agreement. Doubtless the contribution provisions are intended to cover situations not covered by the indemnity provisions, as where the injury is caused by some joint negligent act which is not specifically covered by the contract. For example, if the injury had been caused by an obstruction negligently placed near the tracks but outside the specified track clearances, the contribution provision would likely apply.

■ In any event, if there should be any inconsistency between the indemnity and contribution provisions in paragraph 6, we believe for reasons heretofore stated that paragraph 5 provides complete indemnity in the situation here presented. Thus, like the Seventh Circuit in Deep Vein Coal Co., supra, we believe the specific provisions of paragraph 5 should prevail over the general provisions of paragraph 6.

Paragraph 10 affords little additional aid in the construction problem but does give some emphasis to the binding effect of the obligations assumed by the shipper and to the nonwaiver provisions.

■ Since we have held that the loss here is covered by contractual indemnity, liability is controlled by the provisions of the contract and consideration need not be given to common law standards of indemnity or contribution between joint tortfeasors. In a contractual indemnity situation, the application of theories of active and passive negligence, or primary or secondary negligence, are inappropriate. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491; Seaboldt v. Pennsylvania R. R., supra; Chicago, R. I. & P. R. R. v. Dobry Flour Mills, supra; Minneapolis-Moline Co. v. Chicago, M. St. P. & P. R. R., supra.

■ Shipper's claim that the Uniform Contribution Among Joint Tortfeasors Act, adopted by Arkansas, Ark. Stats.Annot. § 34–1001 et seq., supports his position is without merit. Section 6 of the Act, Ark.Stats.Annot., § 34–1006, expressly provides: "This act does not impair any right of indemnity under existing law."

The trial court properly held that the shipper covenanted to maintain specified minimum track clearances with respect to obstructions; that shipper violated said covenant; that shipper agreed to hold railroad harmless for any damages caused by the breach of such covenant; that injuries to Cloudy, for which payment was made by the railroad, were caused by shipper's breach of the track clearance covenant; and hence, the carrier is entitled to full indemnity.

The judgment appealed from is affirmed.

VAN PELT, District Judge (dissenting).

I disagree with the majority opinion at three points:

a) As to whether a determination as to active and passive negligence is material to the decision in this case; (Here I also disagree with the trial court's determination that the shipper's negligence was active and the railroad's negligence passive.)

b) As to whether clause 5 of the Industrial Track Agreement provides complete indemnity; and

c) As to the interpretation of clause 6 of the Industrial Track Agreement.

As above indicated, I am unable to adopt the trial court's determination that the shipper's negligence in this case was active and that of the railroad passive. This court in a case on appeal from Arkansas involving Texas substantive law set forth the clearest judicial definition of active and passive negligence that I have been able to find, when it said:

"Passive negligence exists where one person negligently brings about a condition or an occasion and active negligence exists where another party negligently acts upon that condition and perpetrates a wrong." Southwestern Greyhound Lines v. Crown Coach Co., 8 Cir., 178 F.2d 628 (632)

The case itself is not in point with this case but the definition is excellent. It is supported by Sec. 95 of Restatement, Restitution, referred to in the majority opinion.

I conclude that the one who brought about the condition in the instant case was the shipper who built the shed in violation of the clearance requirement and that the one who acted upon the condition was the railroad in moving cars over the track. Without the movement of the cars I conclude that Cloudy would not have been injured. The term "passive negligence" seems, therefore, more readily applicable to the shipper's acts than to the railroad's. It was so held by District Judge Bruchhausen in Spielman v. N.Y. N.H. & Hartford Railroad Co., D.C., 147 F.Supp. 451, in a case as nearly in point with our case as any I have found. A dangerous condition was created by the Trap Rock Company in erecting a post too close to the side of the railroad track. In a case brought by the injured employee, the railroad was held actively negligent. The railroad claimed over against the owner of the realty. Judge Bruchhausen stated: "Surely the Railroad's entrance upon Trap Rock's premises, over which it had a right of way, did not transform its actions into passive negligence." It is also to be observed in the instant case that the railroad after the building of the shed moved its track some eight inches to provide greater clearance and could be held to be guilty of negligence in not moving it a sufficient distance to eliminate the dangerous situation.

I conclude that both the shipper and the railroad were guilty of negligence and that their negligence concurred to produce the injury. The majority opinion assumes for the purpose of this decision that the railroad was guilty of negligence.

It is, therefore, my conclusion, to which I make reference later, that both being negligent the latter portion of clause 6 applies, to-wit:

"* * * and if any claim or liability other than from fire shall arise from joint or concurring negligence of both parties hereto it shall be borne by them equally."

Such cases as Booth-Kelly, cited in the majority opinion, which allow complete indemnity, do so on the basis that the railroad was guilty of passive negligence and the shipper or property owner of active negligence. I do not believe these cases have application in the absence of a finding that the shipper or property owner was guilty of active negligence.

I disagree with the majority opinion that clause 5 in and of itself provides complete indemnity in the situation here presented. Clause 5, as I view it, is a non-waiver provision only. If it is to be construed as affording complete indemnity under every circumstance, and regardless of the negligence of the railroad, then the language just quoted from clause 6 is without application or use.

As a background for my interpretation of clause 6 I would first point out that it is basic in indemnity law

"* * * that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms." 27 Am.Jur., Indemnity § 15.

This rule applies whether the negligence of the indemnitee is said to be the sole cause of the accident or only a concurrent cause. See 175 A.L.R. 8, 34–38.

If the railroad wants to hold shippers as insurers of loss such as that suffered in this case, I would require that it do so in more explicit language.

It was said in Union Pacific Rd. Co. v. Bridal Veil Lumber Co., 9 Cir., 219 F.2d 825:

"This court should be and is reluctant to hold the track contract one of insurance. If that was actually intended it would have been easy to say so in unmistakable language in the contract. * * * if the contract were spelled out as one of insurance then you might find the shippers hiring trucks instead of railroad cars." (219 F.2d 833)

Another axiomatic rule was set forth in Arkansas Power & Light Co. v. Murry, 231 Ark. 559, 331 S.W.2d 98, 100, where the court said:

" * * * we have held many times that in case of doubt, or ambiguity, a contract or agreement shall be interpreted against the party who prepared the instrument. See American Insurance Company v. Rowland, 177 Ark. 875, 8 S.W.2d 452."

Since appellee drew the agreement involved here and since it is an Arkansas contract, it should in case of doubt be interpreted against appellee.

Examining clause 6 in the light of the foregoing authorities it is to be observed as to the first sentence, which is not applicable here since it relates only to fire, that it applies "regardless of railroad negligence". No such language is used in clause 5 or in the indemnity provision in the second sentence of clause 6. It is my conclusion that if the indemnity provision of clause 6 is to apply "regardless of railroad negligence" then the agreement should have so stated by repeating in the second sentence these words which were used in the first sentence, to-wit, "regardless of railroad negligence." Likewise, if clause 5 is to be regarded as an indemnity provision the same language should have been repeated in clause 5. Reading clause 6 and observing that the first sentence applies regardless of railroad negligence and observing the omission of these words in the second sentence, it is arguable that the shipper had the right to believe that the 100% indemnity provision did not apply "regardless of railroad negligence".

In this case both parties were negligent. Under this court's definition in Southwestern Greyhound Lines v. Crown Coach Co., supra, both were either passively negligent or the railroad's negligence was active and the shipper's negligence was passive. In any event it was a joint or concurring negligence. Webster defines concurrent as "contributing to the same event or effect". It has also been defined as "operating simultaneously". The accident could not have happened without the combining of the negligence of each. I would therefore apply the above quoted portion of clause 6 relating to joint and concurring negligence and would award judgment to the railroad for 50% of the amount paid Cloudy and not for 100% as ordered by the trial court.

I recognize this as a difficult case and I do not by this dissent intend in any manner to be critical of the distinguished trial judge and my two esteemed colleagues who have reached a different conclusion.